UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL MURPHY,

    Plaintiff,                                            Civil Action No. 19-CV-13252

vs.                                                   HON. BERNARD A. FRIEDMAN

MAGNA SEATING OF AMERICA, INC., and
INTERNATIONAL UNION UNITED AUTOMOBILE,
AEROSPACE, AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW),

    Defendants.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANT MAGNA'S MOTION FOR PARTIAL DISMISSAL

This matter is presently before the Court on the motion of defendant Magna Seating of America, Inc. ("Magna" or "defendant") for partial dismissal of the complaint [docket entry 11]. Plaintiff has filed a response in opposition. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the reasons stated below, the Court shall grant the motion.

This is an employment discrimination case. Plaintiff alleges that she was employed by Magna at its Highland, Michigan, plant from June 2010 until she was discharged in December 2018. Am. Compl. ¶ 11. During the last year of her employment, plaintiff (who is Caucasian) alleges that her supervisors and Magna's human resources representatives disciplined her for taking bathroom breaks and for needing an excessive amount of time to assemble parts, while non-Caucasian employees were not similarly treated. Plaintiff alleges that Magna disciplined her unfairly, and eventually discharged her, because of her gender and/or race and that it retaliated against her for complaining about being treated unfairly. Plaintiff also alleges that Magna's actions violated her rights under its collective bargaining agreement ("CBA") with the United Automobile

Workers ("UAW") of which plaintiff is a member.

In Counts I - III, plaintiff brings claims against Magna under Title VII (Count I), the Elliott-Larsen Civil Rights Act ("ELCRA") (Count II), and the CBA (Count III).[1] In the instant motion, defendant seeks the dismissal of Count I to the extent it claims gender discrimination, and the dismissal of Counts II and III entirely. Plaintiff opposes all aspects of defendant's motion.

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*Plaintiff's Title VII Claims (Count I)*

Defendant first argues that plaintiff's Title VII claim should be dismissed insofar as it is based on allegations of gender discrimination because the charge plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") alleged race discrimination, age discrimination,

---

[1] Plaintiff also sued defendant International UAW for breaching its duty of fair representation. The Court has dismissed the amended complaint as to this defendant, leaving Magna as the sole defendant in this case.

and retaliation, but not gender discrimination.[2] Defendant cites extensive authority for the proposition that a Title VII claim cannot be based on grounds that were not raised in a timely EEOC charge. Plaintiff acknowledges that she did not specifically claim gender discrimination in her EEOC charge, but she argues that she should nonetheless be permitted to pursue a Title VII gender discrimination claim "because the claim properly arises out of and/or relates to [her] EEOC charge." Pl.'s Resp. Br. at 12.

Both sides cite *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (6th Cir. 2010), which stated:

> In designating the procedure for challenging prohibited employment discrimination under Title VII, Congress gave initial enforcement responsibility to the EEOC. Thus, an employee alleging employment discrimination in violation of the statute must first file an administrative charge with the EEOC within a certain time after

---

[2] Plaintiff has attached a copy of her EEOC charge to her amended complaint as Ex. EE. Plaintiff indicated by checking boxes that she was charging defendant with discrimination based on race, age, and retaliation. In the narrative portion of the charge, plaintiff stated:

> I began working for the above-named employer on or about July 20, 2010. I was most recently employed as a Production Worker.
>
> During my employment, I repeatedly complained to my Union and Human Resources about unfair treatment from the Second Row Supervisor; to no avail. On or about September 30, 2018, I was suspended. I know of similarly situated African American employees who engage in the same actions without consequence. In or around October 2018, I was disciplined and suspended for excessive over cycles. I know of a younger, African-American coworker who was also experiencing over cycles, however, she was not subjected to any corrective action. On or about December 20, 2018, I was discharged for excessive over cycles.
>
> I believe I was disciplined, suspended and discharged due to my race, Caucasian; age, 44; and in retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

3

> the alleged wrongful act or acts. *See* 42 U.S.C. § 2000e–5(e)(1). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge. *See* 42 U.S.C. § 2000e–5(f)(1); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion. *See id.* at 44, 94 S.Ct. 1011. Hence, allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role. At the same time, because aggrieved employees–and not attorneys–usually file charges with the EEOC, their pro se complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). As a result, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

*Id.* at 361-62. The Sixth Circuit has further explained the "reasonably related" rule as follows:

> In *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367 (6th Cir. 2002), we reiterated, "the general rule in this circuit ... that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Id.* at 380 (internal citation omitted); *see also Bray v. Palm Beach Co.*, 907 F.2d 150, 1990 WL 92672, at *2 (6th Cir. June 29, 1990) (finding "the facts alleged in the body of the EEOC charge, rather than merely the boxes that are marked on the charge, are the major determinants of the scope of the charge"). We explained in *Weigel* that, "[p]ursuant to this rule, we have recognized that 'where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" 302 F.3d at 380 (quoting *Davis*, 157 F.3d at 463). This principle became known as the "expected scope of investigation test." *Weigel*, 302 F.3d at 380.

*Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

In the present case, no reasonable argument can be made that the facts plaintiff brought to the EEOC's attention should have prompted it to investigate whether plaintiff was the victim of gender discrimination. The EEOC charge itself, including the "particulars" plaintiff provided in the narrative section (*see supra* note 2), makes no mention of gender discrimination. Nor is any suggestion of gender discrimination contained in the "Inquiry Information" form plaintiff filled out at the EEOC's request before her in-person interview. *See* Am. Compl. Ex. CC. At the top of this form, under Reason for Complaint, plaintiff wrote: "Race, Age - I am 40 years of age or older, Color, Retaliation - I complained to my employer about job discrimination." In the narrative section, under Adverse Action(s), plaintiff wrote:

> As the only white woman on an assembly line of 33 employees, I suffered discrimination, including: suspension after my manager refused to let me use the restroom, although non-white employees are allowed to; discipline for leaving my station to put my hair up while non-white employees are not disciplined; multiple HR meetings for ?Over Cycles? . . . when there was no time study on my station, yet I was disciplined and terminated allegedly for Over Cycles. I believe non-white employees on the same station experienced Over Cycles and were not disciplined or terminated like me. Recently, Magna began using new parts on my station 203. The parts require unwrapping. This increased the amount of time needed for assembly. I personally saw non-white employees receive help unwrapping parts on the same station, yet I was never offered nor permitted to receive help; despite my requests.

*Id.* Ex. CC. While plaintiff did refer to herself as a "white woman," it is apparent that she was complaining of race discrimination, not gender discrimination.

On another EEOC Inquiry Information form, plaintiff repeated, under Reason for Complaint: "Race, Age - I am 40 years of age or older, Color, Retaliation - I complained to my employer about job discrimination." Am. Compl. Ex. DD. Under Adverse Action(s), plaintiff

5

repeated the above-quoted paragraph. Plaintiff added, under Supplemental Information, that during a five-day suspension "[m]y position was filled by a non-white employee"; that "I feel I was singled out because I am white and because I asked to have my union rep with me at meetings with HR"; that "I was the only white woman working on the line and I was replaced by a non-white individual"; and that "I told Laura Bryant, Magna HR that I felt that I was being discriminated again[st] because I[']m white." *Id.* Again, the clear gist of plaintiff's EEOC complaint was that she was a victim of race discrimination, not gender discrimination.

The same must be said of two other documents plaintiff cites in her response brief, i.e., an Investigation Report, apparently written by plaintiff's union representative, dated March 8, 2018 (Am. Compl. Ex. H), and the Pre-Charge Inquiry form plaintiff submitted to the EEOC on October 20, 2018 (Am. Compl. Ex. T). The first states:

> She says she had her relief light on at station 203 teamleader came over he works OM(B) shift and Desmond came over. Desmond said your light is on he ask was it a emergncy she said Desmond I need a relief. Cheryl said she feels uncomfortable with him and also Feels because she's a white woman! Desmond brushed up against her cutting through when he could have went around Cheryl want's no contact with him Desmond has people just walking around going to the restroom. Just now Desmond had her wait 15 mins to go to the restroom he came to her just before it was time for her to come up to the union office. Cheryl says this issue with Desmond saying she walked off the line and the first issue when he wouldn't let her go to the restroom. Laura says she wants going [illegible] white people Cheryl said she'll Bump if need be I said no your not going to Laura did admit that he needs to acknowledge the people when he's talking to them or when answering questions. Laura said we need to Find some happy medium with the two

On the Pre-Charge Inquiry form, plaintiff indicated that she believed Magna discriminated against her race, color, and age, stating "I'm the only white female on the line of 33 people, I feel I get treated different!"

6

Having considered all of these documents, the Court concludes that the clear gist of plaintiff's complaint to the EEOC was that Magna discriminated against her because of her race, and perhaps also because of her age, and that Magna retaliated against her for complaining of unfair treatment, particularly as regards bathroom breaks. But no plausible argument can be made that the EEOC should have thought, based on the information plaintiff submitted for its review, that she was complaining about gender discrimination. There is simply no way that, in this case, the "facts related with respect to the charged claim would prompt the EEOC to investigate" gender discrimination. *Weigel*, 302 F.3d at 380. Since plaintiff failed to include any semblance of gender discrimination in her EEOC charge, she is precluded from pursuing gender discrimination as part of her Title VII claim in this lawsuit.

*Plaintiff's ELCRA Claims (Count II)*

In Count II, plaintiff claims that defendant Magna discriminated against her on the basis of her age, gender, and race, and that it retaliated for complaining about being treated unfairly, in violation of the ELCRA. Defendant argues that these claims are time-barred because they were filed after the 180-day limitations period to which plaintiff agreed as a condition of employment. Defendant points to the following paragraph on the employment application plaintiff signed on February 4, 2010:

> **Applicant:  <u>READ CAREFULLY BEFORE SIGNING</u>**
>
> \*   \*   \*
>
> I agree that any action or suit against the Company arising out of employment or termination of employment, including, but not limited to, claims arising under State of Federal civil rights statutes, must be brought within 180 days of the event giving rise to the claim or be forever barred. I waive any limitation to the contrary.

Def.'s Ex. 1. Defendant notes that plaintiff's claims accrued by the date of her discharge (December 20, 2018) and that she commenced this action more than 180 days later. Plaintiff argues that this shortened limitations period is unenforceable because it is unreasonably short, she did not knowingly agree to it, and it is superseded by the CBA.

In *Timko v. Oakwood Custom Coating, Inc*., 625 N.W.2d 101 (Mich. Ct. App. 2001), plaintiff signed an employment application containing a shortened limitations period worded exactly as in the present case. The trial court enforced the provision and dismissed plaintiff's ELCRA claims as time-barred because he commenced suit more than 180 days after he was discharged. In affirming the trial court, the Michigan Court of Appeals stated that the parties to a contract may agree to shorten the limitations period applicable to ELCRA claims "provided that the abbreviated period remains reasonable." *Id.* at 104. It further held that such a period "is reasonable if (1) the claimant has sufficient opportunity to investigate and file an action, (2) the time is not so short as to work a practical abrogation of the right of action, and (3) the action is not barred before the loss or damage can be ascertained." *Id.* The court also stated that "no inherent unreasonableness accompanies a six-month period of limitation," *id.* at 105, and that plaintiff had not shown that the shortened period abrogated his claims or prevented him from ascertaining his damages. *Id.* at 106.

Since *Timko* was decided, this Court has consistently enforced 180-day limitations periods contained in employment applications in ELCRA actions. *See, e.g., Evans v. Canal St. Brewing Co. LLC*, No. 18-CV-12631, 2019 WL 1491969, at *6 (E.D. Mich. Apr. 4, 2019); *Cerjanec v. FCA US, LLC*, No. 17-CV-10619, 2017 WL 6407337, at *8 (E.D. Mich. Dec. 15, 2017); *Smithson v. Hamlin Pub, Inc*., No. 15-CV-11978, 2016 WL 465564, at *3 (E.D. Mich. Feb. 8, 2016); *Davis v. Landscape Forms, Inc*., No. 1:13-CV-1346, 2015 WL 13173236, at *4 (W.D. Mich. Apr.

8

17, 2015), *aff'd*, 640 F. App'x 445 (6th Cir. 2016); *Lewis v. Harper Hosp.*, 241 F. Supp. 2d 769, 774 (E.D. Mich. 2002). This Court shall do the same and dismiss plaintiff's ELCRA claims because they were filed after the 180-day limitations period contained in plaintiff's employment application had expired. This limitations period has repeatedly been found to be reasonable, and plaintiff has not shown that 180 days were insufficient for her to discover her ELCRA claims and file suit.[3]

*Plaintiff's CBA Claims (Count III)*

In this count, plaintiff claims that Magna breached various provisions of the CBA. Specifically, she alleges:

> 124. When Magna allowed Ms. Murphy to be disparately disciplined, suspended and terminated due to her race and/or gender and/or in retaliation for the Complaints, Magna breached its obligations to Ms. Murphy under the CBA, Charter, and/or

---

[3] The Court finds plaintiff's arguments on this issue entirely unpersuasive. Plaintiff first argues that she could not file suit until after she obtained a right-to-sue letter from the EEOC. Pl.'s Resp. Br. at 17. But an EEOC right-to-sue letter is a prerequisite to filing suit under Title VII, not to filing suit under the ELCRA. Nor is the Court persuaded by plaintiff's contention that her employment application is "superseded by the Collective Bargaining Agreement (CBA)." *Id.* at 19. The CBA provisions plaintiff points to in support of this argument concern wages and "all other economic matters," not the time during which an employee may file suit over alleged discrimination. Finally, plaintiff argues that her agreement to the shortened limitations period was not knowing and voluntary. *Id.* at 20. The Court rejects this suggestion as well because plaintiff's signature appears directly below the quoted provision, which bears a boldfaced, capitalized, and underlined heading cautioning her to "**READ CAREFULLY BEFORE SIGNING**." The Michigan Court of Appeals rejected the identical argument in *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471 (Mich. Ct. App. 2005), where plaintiff claimed he did not knowingly waive the three-year statutory limitations period applicable to ELCRA actions. The court disposed of this argument by noting: "This argument is unavailing. The law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement." *Id.* at 475.

9

Handbook, and in so doing, violated Section 301 of the LMRA.

125. When Magna did not follow the CBA dispute resolution procedures and Handbook progressive discipline policy, Magna breached its obligations to Ms. Murphy under the CBA and/or Handbook, and in so doing, violated Section 301 of the LMRA.

126. When Magna did not establish and validate that the production standards on the line(s) where Ms. Murphy worked were fair and equitable and did not give due consideration to fatigue, personal time, and delays, Magna breached its obligations to Ms. Murphy under the CBA and in so doing, violated Section 301 of the LMRA.

Am. Compl. ¶¶ 124-26.

Plaintiff's breach of contract claims against Magna fail because the Court has dismissed plaintiff's claim against defendant International UAW for breach of its duty of fair representation ("DFR"). As the Supreme Court has explained,

> [i]t has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement. *Smith v. Evening News Assn.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *cf. Clayton v. Automobile Workers*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) (exhaustion of intra-union remedies not always required). Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement. *See W.R. Grace & Co. v. Local 759*, U.S —, at —, 103 S.Ct.—, at —, 75 L.Ed.2d —; *Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In *Vaca* and *Hines*, however, we recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. *Vaca*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842; *Hines*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d

> 231; *Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732; *Bowen*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402; *Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" *Mitchell*, 451 U.S., at 66-67, 101 S.Ct., at 1565-1566 (Stewart, J., concurring in the judgment), quoting *Hines*, 424 U.S., at 570-571, 96 S.Ct., at 1059. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

*DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-65 (1983) (footnote omitted). Further, "[a] hybrid section 301 action involves two constituent claims: breach of a collective bargaining agreement by the employer and breach of the duty of fair representation by the union. Unless a plaintiff demonstrates both violations, he cannot succeed against either party." *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (citations and internal quotation marks omitted). *See also Garrish v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 417 F.3d 590, 594 (6th Cir. 2005) ("To recover against a union under § 301, the union member must prove both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation. If both prongs are not satisfied, Plaintiffs cannot succeed against any Defendant."); *Simoneau v. Gen. Motors Corp*., 85 F. App'x 445, 448 (6th Cir. 2003) ("To prevail in a hybrid § 301 action, an employee must prove both that the employer breached the collective bargaining agreement and that the union breached its duty of fair representation of the employee. No liability can attach to the employer unless the employee establishes both of these

elements.").

In the present case, plaintiff cannot prevail on her breach-of-CBA claim against Magna because her DFR claim against the union has been dismissed. As the Court stated in its earlier opinion granting defendant International UAW's motion to dismiss in this matter,

> [d]efendant International UAW notes, and plaintiff concedes, that a "breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). But the claim in the present case that defendant International UAW breached this duty by "fail[ing] to process [her] grievances" cannot be maintained in light of the CBA's provision defining this defendant's role in the grievance process. Under Article 9 of the CBA (which plaintiff references at Am. Compl. ¶ 87(e) and attached to her amended complaint as an exhibit), the International UAW does not become involved in grievances until "Step 4," the last step in a four-step dispute resolution process.[1] *See* Am. Compl. Ex. C at 22. Under this process, it is not the International UAW's role to "process" grievances, but only to participate in them at the final step. Plaintiff does not allege that her grievances reached that step – or indeed that they ever advanced beyond Step 1. Under these circumstances, plaintiff's allegations that defendant International UAW breached its DFR by failing to process her grievances fail to state a claim.
>
> While plaintiff alleges that this defendant "also breached its duty of fair representation to Ms. Murphy by acting in an arbitrary manner with a reckless disregard for the interests of Ms. Murphy," this is precisely the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has held to be insufficient to state a claim. *Ashcroft*, 556 U.S. at 678. If this allegation is meant to refer to defendant International UAW's alleged failure to process plaintiff's grievances, it fails for the reasons stated above.
>
> The Court concludes that the amended complaint fails to state a claim upon which relief can be granted against defendant International UAW.

---

[1] As set forth in Article 9, the first step of the dispute resolution

> process requires the employee to take up the grievance with her supervisor. At this step, the employee may ask the committeeperson to handle the grievance for her. A grievance that is not resolved at Step 1 must "be reduced to a 'verbal discussion form' and signed by the employee." The grievance then proceeds to Step 2, where the committeeperson meets with the employer's human resources manager or production manager. A grievance that is not resolved at Step 2 must "be reduced to writing on forms provided by the Company, and signed by the employee involved." The grievance then proceeds to Step 3, where the committeeperson meets with the employer's assistant general manager and human resources manager. If the grievance is not resolved at Step 3, the company must put its decision in writing and provide two copies to the committeeperson. Then the grievance "may be appealed to" Step 4. Only at this step does the International UAW become involved. At this step, "a meeting will be arranged . . . between the International Union Representative, or designee and the General Manager," as well as "the Chairman and Human Resources Manager or designee who will attempt to resolve the grievance."

Op. & Ord. Granting Def. Int'l UAW's Mot. to Dismiss at 3-4.

As plaintiff has failed to state a DFR claim, it is impossible for her to prevail on her claim that Magna breached the CBA. *See DelCostello*, *Garrison*, *Garrish*, and *Simoneau*, *supra*. Accordingly, the Court shall dismiss Count III of the amended complaint.

*Conclusion*

For the reasons stated above, the Court concludes that (1) plaintiff may not pursue a gender discrimination claim under Title VII because she did not allege gender discrimination in her EEOC charge, (2) plaintiff's ELCRA claims are time-barred, and (3) plaintiff may not pursue her § 301 claim against Magna because she has failed to state a DFR claim against her union. Accordingly,

IT IS ORDERED that defendant's motion for partial dismissal is granted as follows:

Count I is dismissed insofar as it is based on gender discrimination, and Counts II and III are dismissed entirely.

                                      s/Bernard A. Friedman
                                      BERNARD A. FRIEDMAN
                                      SENIOR UNITED STATES DISTRICT JUDGE

Dated: April 13, 2020
       Detroit, Michigan